## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TRI-STATE TRUCK INSURANCE, LTD.,**<br>**et al.,** )<br>)<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**FIRST NATIONAL BANK OF WAMEGO,** )<br>)<br>**Defendant.** )<br>_____) | **CIVIL ACTION**<br><br>**No. 12-2291-KHV** |

### MEMORANDUM AND ORDER

Tri-State Truck Insurance, Ltd., TST, Ltd. and Andrew B. Audet bring suit against First National Bank of Wamego ("FNB Wamego") for making false statements in Uniform Commercial Code filings.  See Complaint For Damages (Doc. #1) filed May 5, 2012.  Specifically, under Pennsylvania, Kansas and North Dakota law, plaintiffs assert claims for UCC violations (Count I), injurious falsehood (Count II) and slander of title (Count III). Id.  This matter comes before the Court on Defendant's Motion To Dismiss Complaint (Doc. #5) filed June 11, 2012 and Plaintiffs' Motion For Leave To File Sur-Reply (Doc. #10) filed July 20, 2012.  As a preliminary matter, the Court sustains plaintiffs' motion for leave to file a surreply.[1]  Under Rule 12(b)(6), Fed. R. Civ. P., defendant seeks to dismiss plaintiffs' claims based on res judicata.  For reasons stated below, the Court sustains defendant's motion.

_____

[1]     Defendant objects to plaintiffs' motion for leave to file a surreply arguing, inter alia, that it did not include new argument or evidence in its reply brief.  Plaintiffs disagree.  Regardless how the parties characterize the content of defendant's reply, the Court finds that the complexity of legal issues and sequence of the parties' briefing on them justifies allowing plaintiffs to file a surreply in this case.

## I.     Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face.  Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679-80.

Res judicata includes both claim preclusion and issue preclusion.  Issue preclusion, or collateral estoppel, prevents re-litigation of an issue by a party against whom the issue has been conclusively determined in a prior action.  See Am. Home Assurance Co. v. Pac. Indem. Co., 672 F. Supp. 495, 498 (D. Kan. 1987); Crutsinger v. Hess, 408 F. Supp. 548, 551 (D. Kan. 1976); Jackson Trak Group, Inc. v. Mid States Port Auth., 242 Kan. 683, 690, 751 P.2d 122, 128 (1988); see also Phelps v. Hamilton, 122 F.3d 1309, 1318 (10th Cir. 1997).  Claim preclusion, on the other hand, prevents parties or their privies from re-litigating a cause of action that has been finally adjudicated by a court of competent jurisdiction.  Am. Home Assurance, 672 F. Supp. at 498; Crutsinger, 408 F. Supp. at 551.  It applies not only to claims that were actually litigated, but also to claims that should have been litigated in the first action but were not.  Am. Home Assurance, 672 F. Supp. at 498; Jackson Trak Group, 242 Kan. at 690, 751 P.2d at 128; Penachio v. Walker, 207 Kan. 54, 56-57, 483 P.2d 1119, 1121 (1971); see also Phelps, 122 F.3d at 1320.  Claim preclusion bars a second action based on the same claim, demand or cause of action.  Penachio, 207 Kan. at 57, 483 P.2d at 1121. It is founded on the principle that the party has litigated or had an opportunity to litigate the same

matter in a former action in a court of competent jurisdiction.

Res judicata is an affirmative defense on which defendant bears the burden of proof.  See Fed. R. Civ. P. 8(c); Nwosun v. Gen. Mills Rests., Inc., 124 F.3d 1255, 1256 (10th Cir. 1997). Defendant may properly raise the defense in a Rule 12(b)(6) motion when all relevant facts are shown by the court's own records, of which the court takes judicial notice.  Merswin v. Williams Cos., Inc., 264 Fed. Appx. 438, 441 (10th Cir. 2010); Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992); Hemphill v. Kimberly-Clark Corp., 605 F. Supp.2d 183, 186 (D.D.C. 2009).  In addition, the Court may take judicial notice of public records from other proceedings.  United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); Hemphill, 605 F. Supp.2d at 186.

## II.    Facts

Based on the record in this case ("Tri-State II") and the record in a prior case in this Court, Tri-State Truck Ins., Ltd. et al. v. First Nat'l Bank of Wamego, Kan., 09-4158-SAC ("Tri-State I"), the following facts are uncontroverted.[2]

### A.    Underlying Facts

Tri-State is a business entity organized in the State of Pennsylvania.  Pretrial Order (Doc. #70) filed October 21, 2010 in Case No. 09-4158-SAC, Stipulation ¶ 1.  TST is a business entity organized in the State of North Dakota.  Id. ¶ 2.  Audet is an individual residing in the State of Pennsylvania. Id. ¶ 3.  At all relevant times, Audet has been chairman, chief executive officer and sole stockholder of Tri-State and TST.  Id.  FNB Wamego is a Kansas banking institution with its principal place of business in Wamego, Kansas.  Id. ¶ 4.

---

[2]    The record in Tri-State I contains no information regarding specific UCC filings. Therefore, with respect to facts regarding UCC filings, the Court accepts as true the allegations in plaintiffs' complaint in this case, i.e. Tri-State II.

On June 30, 2006, Tri-State entered into a commercial loan agreement with Brooke Credit Corporation ("BCC"), which later became known as Aleritas Capital Corporation ("Aleritas").  Id. ¶¶ 5-7.  Under the agreement, Aleritas loaned Tri-State $8,216,000 (Loan No. 5483).  Id. ¶ 8.  Audet guaranteed the loan.  Id. ¶ 9.  On the same date, Aleritas loaned Audet $436,000 (Loan No. 5484). Id. ¶ 10.  At the time, Tri-State and Audet understood that Aleritas often would sell participating interests in loans which it originated.  Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 3.[3]  They did not know what percentage Aleritas might sell or to whom.  Id.

On or about June 30, 2006, Aleritas entered into participation certificates and agreements whereby various lenders acquired interests in one or both loans.  Id. at 3-4.  Initially, lenders collectively participated in approximately 95 per cent of the loans.  Id.  Prior to closing, Aleritas represented to potential participating lenders that it would retain a five per cent interest in Loan No. 5483 to show its support of the transaction.  Id.  At the time of closing, Aleritas retained an interest of 5.025 per cent in Loan No. 5483.[4]  Id.  FNB Wamego purchased a participating interest of 8.520 per cent in Loan No. 5483, but not Loan No. 5484.  Id. at 4.

Less than six weeks later, i.e. before August 11, 2006, unbeknownst to the participating lenders, Aleritas sold its stake in Loan No. 5483, making both loans 100 per cent participated. Therefore, Aleritas no longer had an ownership interest in either loan.  Id.  Nevertheless, Aleritas remained identified as the "lender" in underlying loan documents.  Pretrial Order (Doc. #70) filed in Case No. 09-4158-SAC, Stipulation ¶ 30.

---

[3]      In ruling on cross motions for summary judgment in Tri-State I, the Court found that the facts stated in its Memorandum And Order (Doc. #102) were uncontested.  See id. at 2.

[4]      Although the record is not clear, it appears that at the time of closing, Aleritas may have sold two lenders 100 per cent participating interests in Loan No. 5484.

On July 3, 2006, Aleritas filed UCC financing statements in Pennsylvania as to collateral of Tri-State (Pennsylvania Financing Statement No. 2006070703969) and Audet (Pennsylvania Financing Statement No. 2006070703971).  Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV ¶¶ 7, 11 and Exhibit 1A and 1C thereto.  On July 5, 2006, Aleritas filed a UCC financing statement in Kansas as to collateral of Tri-State (Kansas Financing Statement No. 6195390).[5]  See id. ¶ 22 and Exhibit 2A thereto.  On July 11, 2006, Aleritas filed UCC financing statements in North Dakota as to collateral of Tri-State (North Dakota Financing Statement No. 06-000327061-9) and Audet (North Dakota Financing Statement No. 06-000327061-7).  See id. ¶¶ 22, 37 and Exhibits 3A and 3C thereto.

Several months later, on January 19, 2007, Audet pledged the stock of TST to secure his indebtedness to Aleritas.  The parties amended the loan documents to add TST as a borrower.[6]  Pretrial Order (Doc. #70) in Case No. 09-4158-SAC, Stipulation ¶ 12.  Both loan agreements required Aleritas to provide advice and/or consulting services.  Loan No. 5483 required Aleritas to provide Tri-State and TST consulting services worth $500,000.  Id. ¶ 15.  Loan No. 5484 required it to provide Audet consulting services worth $250,000.  Id. ¶ 16.

On January 17, 2007, Aleritas filed UCC filing statement amendments which added TST as a debtor on Pennsylvania Financing Statement No. 2006070703969 and Kansas Financing Statement No. 6195390.  Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV ¶¶ 9, 11 and Exhibit 1B and 2B thereto.  On February 16, 2007 in North Dakota, Aleritas filed a UCC financing statement as

---

[5]      The record is unclear regarding the nature of Tri-State's relationship to the State of Kansas, if any.

[6]      The record is unclear whether TST became a borrower on both loans or only Loan No. 5483.

to collateral of TST (North Dakota Financing Statement No. 06-000327061-8).[7]  Id. ¶ 35 and

Exhibit 3B thereto.

Until September 12, 2008, Aleritas acted as administrator for Loan Nos. 5483 and 5484.

Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 4.  As administrator, Aleritas

promised participating lenders that it would collect payments and remit to participating lenders their

respective percentages of the payments and any shared borrowers' fees.  Id.

In the fall of 2008, Aleritas experienced financial difficulties and discontinued some or all of

its normal business operations.  Id. at 5.  On September 12, 2008,  Aleritas and FNB Wamego entered

into an assignment and assumption agreement under which Aleritas assigned FNB Wamego the

payment processing loan administration duties for both loans.  Id.  That same day, Tri-State, TST and

Audet acknowledged and consented to the assignment and authorized FNB Wamego to initiate

electronic fund withdrawals for their monthly loan payments.  Id.  Until that time, plaintiffs did not

know that FNB Wamego had any interest in the loans.  Id.  The letter which plaintiffs received

regarding the transfer of payment processing duties stated that Aleritas was transferring the "payment

servicing" of the loans to FNB Wamego, with whom it had "partnered" to "ensure quality payment

processing."  Id. (quoting Exhibit 112 to Doc. #74 in Case No. 09-4158-SAC).  The same letter

advised plaintiffs that the loans had "not been transferred or sold by Aleritas."  Id.  The parties agree

that Aleritas did not sell or transfer the loans, but sold participating interests in them.  Id.  Throughout

the life of the loans, Aleritas was the "lender" as defined and identified in the loan documents.  Id.

In the spring and summer of 2009, FNB "caused to be filed" amendments to UCC statements

---

[7]     The complaint alleges that Aleritas filed North Dakota Financing Statement No. 06-000327061-8 on July 11, 2006, see Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV, but the financing statement states that it was filed on February 16, 2007, see Exhibit 3B to Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV.

in Kansas, Pennsylvania and North Dakota which purported to assign the secured party of record from Aleritas to FNB Wamego.  Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV ¶¶ 13-16, 26-27, 39-44.  Specifically, on May 11, 2009, FNB Wamego filed an amendment to Kansas Financing Statement No. 6195390 which changed the secured party from BCC (the predecessor to Aleritas) to FNB Wamego.  Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV ¶ 26 and Exhibit 2C thereto.  The Kansas amendment listed BCC as the authorizing party and indicated that all collateral was assigned to FNB Wamego.[8]  Exhibit 2C to Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV.  On June 29, 2009, FNB Wamego filed amendments to Pennsylvania Financing Statement Nos. 2006070703969 and 2006070703971.  Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV ¶¶ 13, 15 and Exhibits 1D and 1E thereto.  The Pennsylvania amendments reflect a full assignment to FNB Wamego from BCC d/b/a Aleritas.  See Exhibits 1D and 1E ¶4 to Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV.  At the top of both forms is a box for optional information regarding the name and phone number of a contact at the filer.  Id.  On both forms, the box lists "First National Bank of Wamego 785-456-2221."  Id.  The bottom of both forms has a line for the name of the secured party of record which authorized the amendment.  On that line, both forms list BCC d/b/a Aleritas.  Id. ¶ 9.  On July 31, 2009, FNB Wamego filed amendments to North Dakota Financing Statement Nos. 06-000327061-9, 06-000327061-7 and 06-000327061-8.  Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV ¶¶ 39, 41 and Exhibits 3D, 3E and 3F thereto.  The North Dakota amendments indicate that Aleritas had fully assigned FNB Wamego the secured interests in collateral thereunder.  Id.  In addition, the amendments list BCC as the secured party of record which authorized the amendment.  Exhibits 3D, 3D and 3F to Complaint For Damages

---

[8]      The amendment to Kansas Financing Statement No. 6195390 does not reflect who filed it.  See Exhibit 2C to Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV.

(Doc. #1) in Case No. 12-2291-KHV.

On both loans, Tri-State, TST and Audet continued to make regularly scheduled payments through November of 2009. Id. at 6. On December 14, 2009, a Pennsylvania state court entered a judgment rescinding the loans, see infra. After that judgment, Tri-State, TST and Audet stopped making payments on the loans. Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 6.

**B.    Pennsylvania Case**

On September 23, 2009, Tri-State, TST and Audet filed suit against Aleritas and Brooke Capital Advisors, Inc. ("BCA") in state court in Bucks County, Pennsylvania.[9] Id. at 6. Plaintiffs asserted claims for breach of contract, fraudulent inducement and negligent misrepresentation. Id. Specifically, plaintiffs alleged as follows: In May of 2006, Audet was considering purchasing the assets of an insurance agency, Tri-State Truck Insurance, Ltd., a South Dakota entity ("TST South Dakota") through his newly formed Pennsylvania company, Tri-State. Complaint in Pennsylvania case ¶ 7, Exhibit H to Complaint For Declaratory Judgment in Case No. 09-4158-SAC. Audet met with officers of BCA, who claimed expertise in providing financing and effectuating all aspects of the purchase of insurance agency assets and stock. Id. ¶ 9. In early June of 2006, BCA and Aleritas represented that as part of their services, they would perform a due diligence of TST South Dakota. Id. ¶ 10. Also, BCA and Aleritas represented that they would provide the new agency, i.e. Tri-State, ongoing management and growth support. Id. ¶ 11. On June 8, 2006, BCA and Aleritas informed

---

[9]        According to the Pennsylvania complaint, Aleritas, f/k/a BCC, is a corporation organized in the State of Delaware and BCA is a corporation organized in the State of Kansas. See Complaint in Pennsylvania action ¶¶ 4-5, Exhibit 16 to Affidavit Of Brian Wohler In Support Of Defendant First National Bank Of Wamego's Motion For Summary Judgment ("Wohler Affidavit") (Doc. #76-1) filed November 3, 2010 in Case No. 09-4158-SAC. In 2006, BCA was operating as CJD & Associates. Id. ¶ 8. Aleritas and BCA were subsidiaries of Brooke Corporation, which effectively controlled them. Id. ¶ 53.

plaintiffs that they had completed their due diligence on TST South Dakota and that all was in order to move forward with the asset purchase.  On June 16, 2006, BCA and Aleritas informed plaintiffs that they had a network of over 500 insurance agencies which Tri-State could use to establish business relationships.  Id. ¶ 13.  BCA and Aleritas stated that because the existing network had no truck insurance product, Tri-State would become the preeminent truck insurance provider within the network.  Id.  On June 30, 2006, in connection with the asset purchase of TST South Dakota, Tri-State and Audet entered into Loan Nos. 5483 and 5484.  Id. ¶ 15.  On the same date, Tri-State and Audet entered into an "Agreement for Consulting Services Borrower's Assistance" with BCA.  Id. ¶ 16.  As part of the transaction, BCA and Aleritas required plaintiffs to pay $144,000 for an indemnity policy to be underwritten by another Brooke Corporation subsidiary, DB Indemnity ("DB").  Id. ¶ 30.  Under the policy, DB agreed to make plaintiffs' loan payments under certain circumstances.  Id. ¶ 31.  In fact, DB was an undercapitalized, offshore company that was not capable of making payments under the policy.  Id. ¶ 32.  If plaintiffs had known that the indemnity policy was worthless, they would not have entered into the loan agreements.  Id.  On June 30, 2006, Tri-State completed its purchase of the assets of TST South Dakota.  On July 12, 2006, plaintiffs discovered that the assets did not include an important agency appointment and appropriate licenses which Tri-State needed to operate.  Id. ¶ 18.  These facts were crucial to the transaction and BCA should have discovered them during its due diligence.  Id. ¶ 19.  Because BCA did not properly assess TST South Dakota and did not properly broker the purchase agreement, plaintiffs were required to restructure the sale to acquire the stock of TST South Dakota.  Id. ¶ 20.  The restructured sale closed on December 28, 2006, nearly six months late.  Id. ¶ 21.  From late October of 2006 to January of 2008, BCA introduced Tri-State to only four insurance agents, none of whom had a legitimate interest in truck insurance.  Id. ¶ 26.  BCA breached

the borrower's assistance agreement by not performing competent due diligence of TST South Dakota and by not assisting plaintiffs with finding buyers for their insurance services.  Id. ¶ 38.  BCA and Aleritas fraudulently induced plaintiffs to enter in to the loan transactions by misrepresenting (1) that they would perform a due diligence of TST South Dakota; and (2) that they would provide ongoing management and growth support after the asset purchase.  Id. ¶¶ 43-44.  Also, BCA and Aleritas knew that the DB indemnity policy was not funded and that the borrower's assistance agreement was a sham, i.e. that BCA would not perform its obligations under the agreement.  Id. ¶¶ 45-46.  In the alternative, BCA and Aleritas negligently made misrepresentations.  Id. ¶¶ 56-57.  Plaintiffs reasonably relied on the representations in agreeing to the borrower's assistance agreement and paying for the DB indemnity policy.  Id. ¶ 49.  As a result, plaintiffs suffered damages in the following amounts: $750,000 (cost of borrower's assistance agreement); $144,000 (cost of DB indemnity policy); $2,880,000 (cost of restructuring purchase agreement from asset to stock purchase); $38,661 (attorneys fees for restructuring purchase); and $2,160,000 (consequential damages caused by lack of growth of Tri-State).  Id. ¶¶ 40-41.

Aleritas and BCA did not appear in the Pennsylvania action.  Id. ¶ 34.  No participating bank was a party to – or had notice of – the Pennsylvania lawsuit.  Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 6-7.

On October 30, 2009, the Pennsylvania state court entered default judgment on plaintiffs' claims.  See Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 6-7; Pretrial Order (Doc. #70) in Case No. 09-4158-SAC, Stipulations ¶¶ 32-35.

On December 14, 2009, the Pennsylvania court held an uncontested hearing on damages.  Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 7.  It entered judgment as follows.

On the breach of contract claim against BCA, the court awarded damages in the amount of $5,972,661 plus costs.[10]  Order in Pennsylvania case ¶ 1, Exhibit H to Complaint For Declaratory Judgment (Doc. #1) in Case No. 09-4158-SAC.  On the fraudulent inducement claim against BCA and Aleritas, the court determined that Loan Nos. 5483 and 5484 were "procured by fraud."  Id. ¶ 2.  The Pennsylvania court entered a judgment rescinding the loans and all loan documents of any kind under the loans, including UCC statements.  Id.  In addition, the court awarded damages in the amount of $1,756,619.18 plus costs.[11]  Id.  On the negligent misrepresentation claim against BCA and Aleritas, the court awarded damages in the amount of $5,972,661 plus costs.  Id. ¶ 3.

In December of 2009, FNB Wamego learned of the Pennsylvania judgment.[12]  Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 7.  On December 24, 2009, FNB Wamego filed a motion to intervene in the Pennsylvania case and vacate the judgment.  Id.; Pretrial Order (Doc. #70)

---

[10]       The record does not disclose how the Pennsylvania court determined the amount of damages, or what time period they cover.

[11]       Specifically, with respect to the fraud claim (Count II), the judgment provides:

Count II – Judgment in favor of Plaintiffs Tri-State Truck Insurance, Ltd., TST, Ltd. and Andrew B. Audet and against Brooke Capital Advisors, Inc. and Aleritas Capital Corporation, as follows:

    1)      A determination that Loan No. 5483 and Loan No. 5484 were procured by fraud;
    2)      A Judgment of Rescission Of Loan No. 5483 and Loan No. 5484 and any [and] all loan documents of any kind under Loan No. 5483 and No. 5484, including but not limited to any Loan Addendum, Modifications, Stock Pledge Agreements, Security documents, UCC Statements, Loan Obligations or Guarantys.
    3)      Monetary damages in the amount of $1,756,619.18 plus costs.

Order in Pennsylvania case, Exhibit 16 to Wohler Affidavit in Case No. 09-4158-SAC.

[12]       FNB Wamego learned of the Pennsylvania case by virtue of the complaint which plaintiffs filed on December 15, 2009 in Tri-State I, infra.  Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 18.

in Case No. 09-4158-SAC at 6, Stipulations ¶ 36.  FNB Wamego asserted that because Aleritas had sold 100 per cent participating interests in the loans and assigned it the payment processing and administration duties, FNB Wamego was the real party in interest on plaintiffs' claims.  See Petition Of First National Bank Of Wamego To Intervene And Strike Or Open Default Judgment ¶¶ 6-9, 16, Exhibit 18 to Wohler Affidavit in 09-4158-SAC.  FNB Wamego asserted that plaintiffs knew this fact because during the last year, they had attempted to renegotiate the loans with FNB Wamego.  Id. ¶ 13.  FNB Wamego asserted that although the parties and their counsel had been in touch for the last several months, plaintiffs did not inform it of the Pennsylvania lawsuit.  Id. ¶ 15.  FNB Wamego asserted that because it was the real party in interest, plaintiffs should have served it as defendant in the Pennsylvania case.  Id. ¶ 16.  FNB Wamego pointed out that one day after obtaining the Pennsylvania judgment, plaintiffs sued it in Kansas for declaratory judgment based on the Pennsylvania judgment.  Id. ¶¶ 20, 25.  FNB Wamego also argued that plaintiffs had not properly served Aleritas and BCA.  Id. ¶¶ 26-34.  FNB Wamego asked the Pennsylvania court, inter alia, to allow it to intervene in the case and to strike the default judgment.  Id. at 9.

On July 29, 2010, the Pennsylvania court denied the petition to intervene.  See id. ¶ 37.  The Pennsylvania court found that plaintiffs had properly served BCA and Aleritas and that the court had properly entered judgment against them.  See Memorandum Opinion in Pennsylvania case ¶¶ 4-9, 20, Exhibit 21 to Wohler Affidavit in Case No. 09-4158-SAC.  The Pennsylvania court found that its record was unclear regarding whether FNB Wamego had an ownership or other interest in Loan Nos. 5483 and 5484, and that it had not made any rulings in that regard.  Id. ¶ 13.  The court found that under Pennsylvania rules of procedure, intervention was not proper because the action was no longer pending and that even if it were pending, FNB Wamego had not demonstrated the factual

basis for its argument that the Pennsylvania judgment against Aleritas and BCA would impose liability on FNB Wamego or would affect its own legally enforceable interest in the loans.  Id. ¶¶ 17-19.  The court stated that it made no findings regarding the merits of any claim of FNB Wamego regarding ownership or other legally enforceable rights in the loans, and that its order was without prejudice to FNB Wamego raising those issues in the declaratory judgment action filed in the United States District Court for the District of Kansas, i.e. Tri-State I, infra.  Id. ¶ 21; see also Order in Pennsylvania case, Exhibit 20 to Wohler Affidavit in Case No. 09-4158-SAC.  FNB Wamego did not appeal the ruling.  Pretrial Order (Doc. #70) in Case No. 09-4158-SAC at 7, Stipulations ¶ 38.

### C.    Tri-State I

On December 15, 2009, one day after the Pennsylvania state court entered judgment rescinding the loans, Tri-State, TST and Audet filed suit against FNB Wamego in this Court, i.e. Tri-State I.  See Complaint For Declaratory Judgment (Doc. #1) in Case No. 09-4158-SAC.  As noted, the Pennsylvania court granted default judgment on plaintiffs' claims that BCA and Aleritas had procured Loan Nos. 5483 and 5484 through fraud, ordered that all UCC statements under the loans be rescinded and awarded damages in the amount of $1,756.619.18.[13]  In Tri-State I, plaintiffs asked the court to declare the rights and obligations of FNB Wamego and other participating lenders regarding Loan Nos. 5483 and 5484.  See Complaint For Declaratory Judgment (Doc. #1) in Case No. 09-4158-SAC ¶¶ 21, 26.  Specifically, plaintiffs asked the court to order that (1) plaintiffs owed no further obligations to FNB Wamego or any other participating lender; (2) all security in the possession or control of FNB Wamego be returned to plaintiffs; and (3) all UCC filings be cancelled or

---

[13]    The Pennsylvania court also awarded damages of $5,972,661.00 on the breach of contract and negligent misrepresentation claims.  As noted, the record does not reveal what the damages covered or for what time period.  There is no indication that the Pennsylvania court awarded separate damages for wrongfully filed UCC statements.

terminated.  See Pretrial Order (Doc. #70) in Case No. 09-4158-SAC at 2, 10.

FNB Wamego asserted counterclaims for breach of contract and declaratory judgment. Id. at 2, 15, 18-20.  Specifically, FNB Wamego alleged that by not paying monthly installments and providing certain financial documents, plaintiffs had defaulted on the loans.  Id. at 2.  In addition, FNB Wamego sought an order finding that (1) it and other participating lenders were third party beneficiaries who could enforce plaintiffs' obligations under the loans; (2) plaintiffs had no personal claims or defenses which prevented FNB Wamego from enforcing the loans; (3) plaintiffs had defaulted on the loans; (4) plaintiffs owed obligations to FNB Wamego and other participating lenders; and (5) all payments were due to FNB Wamego.  Id. at 19-20.  FNB Wamego sought damages in the amount of unpaid principal and interest and its costs and attorney's fees.[14]  Id. at 21-22.

On August 3, 2011, the Honorable Sam A. Crow, United States District Judge, entered summary judgment in favor of plaintiffs.[15]  See Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC.  Judge Crow found that the primary issue presented by plaintiffs' claims was the effect of the Pennsylvania judgment on the Tri-State I parties, i.e. whether the Pennsylvania judgment was binding as to FNB Wamego and other participating lenders when they were not parties to the action and had no notice of it.  Id. at 8.  Judge Crow found that because FNB Wamego and other participating banks were not a party or in privy with a party in the Pennsylvania action, principles of

---

[14]     On December 17, 2010, the Court entered an order which allowed the Gibson Family Limited Partnership, an entity which had purchased participating interests in the loans, to intervene as a defendant in the case.  See Memorandum And Order (Doc. #91) in Case No. 09-cv-04158-SAC.

[15]     The parties in Tri-State I filed cross motions for summary judgment on all claims.  See Plaintiffs' Motion For Summary Judgment (Doc. #73) and First National Bank Of Wamego's Motion For Summary Judgment (Doc. #75), both filed November 3, 2010 in Case No. 09-4158.

res judicata did not apply. Id. at 10-11. For the same reasons, Judge Crow found that plaintiffs could not enforce the Pennsylvania judgment against FNB Wamego and other participating lenders. Id. at 19. Judge Crow found, however, that plaintiffs did not seek to enforce the Pennsylvania judgment against FNB Wamego. Id. Instead, Judge Crow found that plaintiffs sought to enforce the judgment as to the parties in the Pennsylvania lawsuit, i.e. between plaintiffs and Aleritas, and show that as a consequence of the judgment FNB Wamego and other participating banks could not enforce plaintiffs' obligations under the loans.[16] Id. With respect to defenses which FNB Wamego raised to plaintiffs' claims, i.e. unclean hands, lack of venue, failure to mitigate damages, failure to elect remedies, holder in due course and payment of good and valuable consideration, Judge Crow found that they either asked the court to reconsider the merits of the Pennsylvania judgment or damages thereunder, or were unsupported by the record. Id. Judge Crow concluded that the Pennsylvania judgment of rescission was valid between plaintiffs and Aleritas and that as a consequence of the judgment, FNB Wamego and other participating lenders could not enforce any obligations which plaintiffs may have had under the loans or loan documents. Id. at 20.

With regard to FNB Wamego's counterclaims, Judge Crow reached a similar result. Specifically, with regard to the breach of contract counterclaim, Judge Crow found that because FNB

---

[16]     Specifically, Judge Crow stated as follows:

The Court notes, however, that the Pennsylvania judgment does not purport to bind [FNB Wamego] or any other participating bank as a judgment debtor, and Plaintiffs seek nothing affirmatively from them in this suit. Instead, Plaintiffs seek to have this Court enforce the Pennsylvania judgment as between the parties to that suit (Plaintiffs and Aleritas), and as a consequence of that valid rescission of the Loans, find [FNB Wamego] and other participating banks unable to enforce any obligations Plaintiffs may have had in relation to the Loans prior to rescission.

Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 19.

Wamego was not a party to the loan agreements, it did not have standing to enforce them.[17]  Id. Specifically, Judge Crow found that (1) as a participant bank, FNB had no legal relationship with the borrower, id. at 20-21; (2) FNB was not an intended third party beneficiary under the loan agreements, id. at 21-25; (3) the assignment of loan servicing duties from Aleritas to FNB Wamego did not include all of Aleritas's right and title to the loans, id. at 27-28; and (4) the participation agreement between Aleritas and FNB Wamego did not give FNB Wamego any right to bring an action directly against the borrowers for defaulting on the loans, id. at 28-30.[18]  Judge Crow concluded that FNB Wamego did not have standing to enforce the loans between plaintiffs and Aleritas.  Id. at 32.  FNB Wamego asserted equitable estoppel, arguing that plaintiffs treated FNB Wamego as the lender when they needed certain loan concessions.[19]  See Defendant First National Bank Of Wamego's Memorandum In Support Of Motion For Summary Judgment ("FNB Wamego's Memorandum") (Doc. #76) filed November 3, 2010 in Case No. 09-4158 at 21-24.  Judge Crow rejected the argument, finding that even if the facts were as FNB Wamego alleged, they did not change the result in the case before him.

---

[17]     Judge Crow found that no exception to the general rule applied.  Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 20.

[18]     Judge Crow also found that even if Aleritas had assigned FNB Wamego its rights under the loans, FNB Wamego would stand in the shoes of Aleritas and could not enforce the loans because they had been rescinded.  Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 30-31.

[19]     Specifically, FNB Wamego asserted that based on plaintiffs' prior acts, the court should not allow plaintiffs to argue that it did not have a right to enforce the loans.  FNB Wamego asserted that in September of 2009, plaintiffs treated it as the lender by (1) making regular loan payments for over a year; (2) entering into an agreement with participating lenders as "successors" to Aleritas under which participating lenders agreed to waive a loan covenant which required plaintiffs to maintain a minimum of $1,600,000 in earnings before interest, taxes, depreciation and amortization; and (3) seeking from participating lenders an agreement to pay only interest on the loans for six months.  See FNB Wamego's Memorandum (Doc. #76) in Case No. 09-4158-SAC at 22-23.  Judge Crow found that the parties disputed these facts.  Memorandum And Order (Doc. #102) in Case No. 09-4158-SAC at 33-34.

<u>Memorandum And Order</u> (Doc. #102) in Case No. 09-4158-SAC at 35-36.  Specifically, Judge Crow

stated as follows:

> FNB [Wamego's] estoppel argument is nothing more than an assertion that Plaintiffs
> . . . elected to ratify the voidable contracts, so the contracts should not have been
> rescinded.   But the issue whether Pennsylvania court erred in rescinding the loan
> agreements cannot be reexamined by this court.  The Loans have been rescinded and
> this court is not at liberty to determine whether the facts now asserted by FNB
> [Wamego] would have been sufficient to show ratification or estoppel precluding
> rescission, had they been presented in the Pennsylvania action.

<u>Id.</u> at 35.[20]   Judge Crow concluded that because the Pennsylvania state court entered judgment

rescinding the loans, FNB Wamego could not enforce plaintiffs' obligations thereunder.  <u>Id.</u> at 19-20.

With regard to the loans, the Court ordered that (1) plaintiffs owed no obligations; (2) all security in

the possession, custody or control of FNB Wamego be returned to plaintiffs; and (3) all UCC filings

be cancelled or terminated.  <u>Judgment In A Civil Case</u> (Doc. #103) filed August 3, 2011 in Case

No. 09-4158-SAC.[21]

---

[20]     As noted, the Pennsylvania court denied FNB Wamego's petition to intervene and
FNB Wamego did not appeal that ruling.

[21]     The <u>Tri-State I</u> judgment states, in part, as follows:

> IT IS FURTHER ORDERED AND ADJUDGED that Plaintiffs are entitled
> to the following declaratory judgment:  1. because Loan No. 5483 and Loan
> No. 5484 have been validly rescinded, plaintiffs owe no obligation under those loans,
> whether in contract or otherwise, to First National Bank of Wamego, to The Gibson
> Family Limited Partnership, or to any participating bank represented by First
> National Bank of Wamego in its capacity as servicer of those loans;
> 2. all security on Loan No. 5483 and Loan No. 5484 in the possession,
> custody or control of First National Bank of Wamego (including any in the
> possession, custody or control of Quivira Capital, LLC) shall be returned to Plaintiffs
> forthwith; and
> 3. all UCC filings on Loan No. 5483 and Loan No. 5484 shall be canceled or
> terminated forthwith.

<u>Judgment In A Civil Case</u> (Doc. #103) in Case No. 09-4158-SAC.

On August 25, 2011, FNB Wamego filed a motion to stay execution and enforcement of the Tri-State I judgment pending resolution of post-judgment proceedings, including appeal.  See Defendant's Motion To Stay Execution And Enforcement Of Judgment (Doc. #105) in Case No. 09-4158-SAC.  Plaintiffs objected, arguing that a stay of execution would harm them.  Plaintiffs' Response To Defendant's Motion To Stay Execution And Enforcement Of Judgment (Doc. #120) filed September 8, 2011 at 10-11.  Specifically,  plaintiffs asserted that the existence of filing statements on the loans falsely suggested to the public that plaintiffs' ownership interest in stock certificates was encumbered when in fact it was not.[22]  Id.

On August 31, 2011, FNB Wamego and the Gibson Family Limited Partnership filed a motion to reconsider the summary judgment ruling.  See Defendants' Motion For Reconsideration (Doc. #109) in Case No. 09-4158-SAC.  On September 2, 2011, they filed a notice of appeal.  See Protective Notice Of Appeal (Doc. #117) in Case No. 09-4158-SAC.  On September 29, 2011, Judge Crow stayed execution of the judgment pending appeal.  See Memorandum And Order (Doc. #131) in Case No. 09-4158-SAC at 8.  On October 6, 2011, he denied the motion for reconsideration.  See Memorandum And Order (Doc. #133) in Case No. 09-4158-SAC.  Four months later, on February 7, 2012, pursuant to the parties' agreement, the Tenth Circuit Court of Appeals dismissed the appeal.[23]  See Order (Doc. #142) in Case No. 09-4158-SAC.

**D.     Tri-State II**

On May 15, 2012, Tri-State, TST and Audet filed this lawsuit against FNB Wamego, i.e. Tri-

---

[22]     The record does not reveal the specific filing statements to which plaintiffs were referring.

[23]     The record reveals no details regarding the parties' agreement which resulted in dismissal of the appeal.

State II.  Complaint For Damages (Doc. #1) in Case No. 12-2291-KHV.  Under Pennsylvania, Kansas and North Dakota law, plaintiffs assert claims regarding the amendments which FNB Wamego filed in the spring and summer of 2009 regarding Pennsylvania Financing Statement Nos. 2006070703969 and 2006070703971, Kansas Financing Statement No. 6195390 and North Dakota Financing Statement Nos. 06-000327061-9, 06-000327061-7 and 06-000327061-8.  Specifically, plaintiffs assert claims for (1) UCC violations (Count I); (2) injurious falsehood (Count II); and (3) slander of title (Count III).  Id. at 7-11.

With respect to Count I, i.e. UCC violations, plaintiffs allege as follows:  State laws in Pennsylvania, Kansas and North Dakota require a secured party of record to file a UCC amendment assigning rights from the secured party to another.  Id. ¶¶ 17, 28, 45.[24]  When defendant filed the UCC amendments, it was not the secured party of record.  Id. ¶ 51.  It nevertheless represented to the respective secretaries of state that it was, in fact, the secured party of record, i.e. BCC, now known as Aleritas.  Id. ¶¶ 52.  In doing so, defendant violated the respective states' UCC law.  Id. ¶ 53.  The unlawful UCC amendments continue to encumber plaintiffs' property to this day.  Id. ¶¶ 18, 29, 46.  Defendant filed the amendments in knowing, intentional or wanton violation of the law and with malicious intent to deny plaintiffs property rights.  Id. ¶¶ 20-21, 30-31, 47-48.  As a result of defendant's acts, each plaintiff has suffered damages in excess of $75,000.  Id. ¶ 54.  Defendant acted willfully, wantonly, fraudulently or maliciously such that it is liable for punitive damages of at least $250,000 to each plaintiff.  Id. ¶ 55.

With respect to Count II, i.e. injurious falsehood, plaintiffs allege as follows:  In causing the UCC amendments to be filed defendant knowingly published false statements, specifically

---

[24]     Plaintiffs' complaint does not cite the state laws to which they refer.  Defendant's motion does not challenge the merit of plaintiffs' claims.

representing that it was BCC, now known as Aleritas.  Id. ¶¶ 57, 59.  Defendant knew or should have known that the amendments were likely to harm plaintiffs' interests in the collateral thereunder.  Id. ¶ 58.  As a result of the false statements, each plaintiff has suffered damages in excess of $75,000.  Id. ¶ 61.  Defendant acted willfully, wantonly, fraudulently or maliciously such that it is liable for punitive damages of at least $250,000 to each plaintiff.  Id. ¶ 62.

With respect to Count III, i.e. slander of title, plaintiffs allege as follows:  In causing the UCC amendments to be filed defendant knowingly published false statements, specifically representing that it was BCC, now known as Aleritas.  Id. ¶¶ 64, 66.  Defendant intended the amendments to harm plaintiffs' interests in the collateral thereunder.  Id. ¶ 65.  The false UCC amendments were, in fact, harmful to plaintiffs' interests.  Id. ¶ 67.  Defendant filed the false UCC amendments with malice toward plaintiffs.  Id. ¶ 68.  As a result of defendant's false statements, each plaintiff has suffered damages in excess of $75,000.  Id. ¶ 69.  Defendant acted willfully, wantonly, fraudulently or maliciously such that it is liable for punitive damages of at least $250,000 to each plaintiff.  Id. ¶ 70.

## III.    Analysis

Defendant asserts that principles of res judicata, or claim preclusion, bar plaintiffs from litigating their claims in this case.  Plaintiffs respond that defendants have not shown the requirements of claim preclusion and that under the so-called "declaratory judgment exception," res judicata does not apply.

To determine the res judicata effect of a federal diversity judgment, the Court applies federal common law.  See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001); Hartsel Springs Ranch of Colo. v. Bluegreen Corp., 296 F.3d 982, 986 (10th Cir. 2002).  The Supreme Court has directed that in determining the preclusive effect of a federal diversity judgment, federal courts

-20-

should adopt the same claim-preclusive rule that state courts would apply in the state in which the federal diversity courts sits.  Semtek Int'l, 531 U.S. at 508; see also Hartsel Springs Ranch, 296 F.3d at 986.  Thus, to determine the preclusive effect of the judgment in Tri-State I, the Court looks to Kansas law.  As a practical matter, Kansas law regarding claim preclusion does not appear to differ significantly from federal law.  See Rhoten v. Dickson, 290 Kan. 92, 106, 223 P.3d 786, 797 (2010); Stanfield v. Osborne Indus., Inc., 263 Kan. 388, 396, 949 P.2d 602, 608 (1997).

Under Kansas law, res judicata, i.e. claim preclusion, requires the following four elements: (1) the same claim or cause of action; (2) the same parties; (3) the claims here were or could have been raised in the prior action; and (4) the prior action resulted in a final judgment on the merits. Winston v. Kan. Dep't of SRS, 274 Kan. 396, 413, 49 P.3d 1274, 1285 (2002); Netwig v. Georgia–Pac. Corp., 266 F. Supp.2d 1279, 1284 (D. Kan. 2003) (citing Neunzig v. Seaman Unified Sch. Dist. No. 345, 239 Kan. 654, 661, 722 P.2d 569, 575 (1986)).[25]  Here, the second and fourth elements are clearly satisfied.[26]  Thus, the issue turns on whether as a matter of law, defendants have

---

[25]    Kansas courts sometimes articulate the test differently, stating that res judicata requires the following four conditions: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action and (4) identity in the quality of persons for or against whom the claim is made.  See Waterview Resolution Corp. v. Allen, 274 Kan. 1016, 1023, 58 P.3d 1284, 1290 (2002).  The Court's research reveals no Kansas cases discussing, analyzing or even acknowledging the fact that courts sometimes articulate the test differently.  See, e.g., State v. Martin, 294 Kan. 683, 641, 279 P.3d 704, 706 (2012) (articulating "same claim" test); Venters v. Sellers, 293 Kan. 87, 98, 261 P.3d 538, 546 (2011) (articulating "identity in thing sued for" test).  The Court agrees with the Kansas Supreme Court that the "same claim" test is "[m]ost plainly stated."  In re Fleet, 293 Kan. 768, 777-78, 272 P.3d 583, 589 (2012).  Accordingly, the Court uses the "same claim" test.

[26]    In the introductory section of their memorandum in opposition to defendant's motion, plaintiffs assert briefly that Tri-State I involved FNB Wamego in its capacity as representative of all participating lenders whereas this case involves FNB Wamego in its own capacity.  Plaintiffs' Response To Defendant's Motion To Dismiss ("Plaintiffs' Response") (Doc. #8) filed July 2, 2012 in Case No. 12-2291 at 2, 6-7.  Plaintiffs offer no legal analysis or authority in this regard.  The
(continued...)

shown that (1) this case involves the same claim or cause of action as <u>Tri-State I</u> and (2) plaintiffs asserted or could have asserted their claims in <u>Tri-State I</u>.

**A.      Whether This Case Involves Same Claim Or Cause Of Action As <u>Tri-State I</u>**

In the context of claim preclusion, the term "claim" is defined in factual terms such that the same factual transaction – or series of factual transactions – is one claim, regardless of the number of substantive legal theories that may be available to plaintiffs based on those facts.  <u>See Stanfield v. Osborne Indus., Inc.</u>, 263 Kan. 388, 401, 949 P.2d 602, 611 (1997) (applying federal law to determine preclusive effect of state law claims raised but not decided in federal court case).[27]  In other words, the term "claim" connotes a natural grouping or common nucleus of operative facts that are woven together as to constitute a single claim.  <u>Id.</u> (quoting Restatement (Second) of Judgments § 24, Comment b, at 199).  Factors relevant to whether a set of facts constitute one claim are their relatedness in time, space, origin or motivation and whether taken together, they form a convenient unit for trial purposes.  <u>Id.</u>  Though no single factor is determinative, the question of trial convenience makes it appropriate to look at how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first action.  <u>Id.</u>  If substantial overlap exists, courts should ordinarily preclude the second action.  <u>Id.</u>

Here, it appears that plaintiffs' claims are directly connected to their claims in <u>Tri-State I</u>.  In

---

[26](...continued)
Court finds nothing in the record which supports the conclusion that in <u>Tri-State I</u>, FNB Wamego was not acting in its own capacity.  Whether it owed duties and obligations to participating banks is a separate matter.

[27]      Although Kansas courts apparently have not expressly adopted the transactional approach, the Tenth Circuit and this Court have determined that they approve the approach.  <u>See</u> <u>Phillips USA, Inc. v. Allflex USA, Inc.</u>, 77 F.3d 354, 360-61 (10th Cir. 1996); <u>Eatinger v. BP Am. Prod. Co.</u>, No. 07-1266-EFM, 2012 WL 204564, at *5 (Jan. 24, 2012); <u>N. Natural Gas Co. v. L.D. Drilling, Inc.</u>, No. 08-1405-WEB, 2009 WL 3739735, at *8 (Nov. 6, 2009).

this case, they assert claims for damages allegedly caused by defendant's filing of false UCC amendments regarding Loan Nos. 5483 and 5484.  In Tri-State I, plaintiffs asked the Court to cancel or terminate all UCC filings related to the same loans.  In other words, in Tri-State I, plaintiffs sought to cancel or terminate the same UCC amendments for which they now seek damages.  Plaintiffs assert that the claims are different because the facts and legal issues in Tri-State I did not involve the UCC filings at issue here.  Plaintiffs' Response To Defendant's Motion To Dismiss ("Plaintiffs' Response") (Doc. #8) filed July 2, 2012 in Case No. 12-2291 at 2, 6-7.  Specifically, plaintiffs assert that in Tri-State I, the pretrial order contains no facts regarding the UCC filings and no party raised any legal issue relating thereto.  Id. at 6-7, 12.  Plaintiffs' argument misses the boat.  The fact that the pretrial order in Tri-State I does not mention the UCC filings merely underscores the fact that plaintiffs did not assert the UCC claims in that case.  It does not show that the claims do not arise out of the same factual transaction or series of factual transactions.

Plaintiffs assert that in this case, the operative facts are different because they involve alleged misrepresentations by defendant when it filed the UCC amendments.  See Plaintiffs' Response (Doc. #8) in Case No. 12-2291-SAC at 12.  But the operative facts go much deeper than that.  In both cases, the claims arise from Loan Nos. 5483 and 5484 and involve the nature of defendant's interest therein.  Both cases involve the same series of factual transactions: the underlying loans, defendant's involvement as participating lender in the loans, Aleritas's assignment of loan administration duties to defendant and the scope of defendant's rights and interests in the loans.  In Tri-State I, Judge Crow found that defendant did not have standing to enforce the loans because, inter alia, the assignment of loan servicing duties did not include all of Aleritas's right and title to the loans.  See Memorandum And Order (Doc. #103) in Case No. 09-4158-SAC at 27-28.  Intrinsically related to that ruling is the

scope of the assignment of loan servicing duties, i.e. whether it included an assignment of Aleritas's secured interests under the loans. The resolution of that issue is directly related to whether defendant made false statements in the UCC filings.[28]  On this record, the Court concludes that substantial overlap exists between the facts in this case and the facts in Tri-State I such that they would form a convenient unit for trial purposes.  Accordingly, the Court finds that this case involves the same claim or cause of action as Tri-State I.

### B.    Whether Plaintiffs Asserted Or Could Have Asserted Their Claims In Tri-State I

To show that res judicata precludes plaintiffs' claims, defendant must show that plaintiffs asserted or could have asserted their claims in Tri-State I.  Here, plaintiffs did not assert the UCC and slander of title claims in Tri-State I.  Thus, the issue is whether they *could have* asserted the claims in that case.  Res judicata would not necessarily preclude a second lawsuit based on acts which occurred after the first suit was filed.  See, e.g., N. Natural Gas Co. v. L.D. Drilling, Inc., No. 08-1405-WEB, 2009 WL 3739735, at *8 (D. Kan. Nov. 6, 2009).  In this case, however, plaintiffs' claims are based on acts which occurred before Tri-State I.  Specifically, defendant filed the allegedly false UCC amendments in the spring and summer of 2009.  Almost half a year later, on December 15, 2009, plaintiffs filed their claims in Tri-State I.

Defendant asserts that plaintiffs obviously knew about the UCC filings when they filed Tri-

---

[28]    In their surreply, plaintiffs assert that even if defendant had prevailed in Tri-State I, i.e. if Judge Crow had found that defendant could enforce the loans against plaintiffs, the claims in this case would still be viable.  See Plaintiffs' Sur-Reply In Opposition To Motion To Dismiss ("Plaintiffs' Surreply") Exhibit A to Plaintiffs' Reply In Support Of Motion For Leave to File Sur-Reply (Doc. #13) in Case No. 12-2291-KHV at 4.  In other words, plaintiffs assert that even if defendant had a right to enforce the loans, it would still be liable to plaintiffs for the claims in this case because it misrepresented to state authorities that it was Aleritas when it filed the UCC amendments.  Id. at 4-5.  The Court finds this theory implausible.  In particular, if Aleritas did assign defendant its security interests under the loans, it appears that the UCC amendments which defendant filed would not have caused any harm to plaintiffs.

State I.  Specifically, defendant asserts that plaintiffs must have known about the filings or there would have been no need for them to ask the Tri-State I court to cancel them.  See Memorandum In Support Of Defendant's Motion To Dismiss Complaint ("Defendant's Memorandum") (Doc. #6) filed June 11, 2012 in Case No. 12-2291-KHV at 10.  Plaintiffs argue that defendant has not shown that they knew of the existence of their claims in sufficient time to assert them in Tri-State I.  Plaintiffs' Response (Doc. #8) in Case No. 12-2291-KHV at 13.  Specifically, plaintiffs assert that nothing in the complaint alleges the time when they first knew of the alleged misrepresentations and that defendant asserts no facts regarding the issue.  Id. at 13-14.  Although plaintiffs do not articulate it as such, they appear to be asserting that before Tri-State I, the claims did not accrue because they had not yet discovered underlying facts regarding the claims.[29]  Plaintiffs assert no facts regarding when they discovered the claims.

The undisputed record supports defendant's assertions.  Obviously, plaintiffs knew that UCC filings had substituted defendant as the secured party of record on the loans.  If not, plaintiffs would have had no need to ask the Tri-State I court to cancel them.[30]  Moreover, UCC filings are matters of

---

[29]   As noted, plaintiffs assert claims for UCC violations, injurious falsehood and slander of title.  Plaintiffs assert that in Kansas, claims for fraud and slander of title do not accrue until they are discovered.  Plaintiffs do not assert claims for fraud.  As to slander of title claims, plaintiffs cite LaBarge v. City of Concordia, 23 Kan. App.2d 8, 18-19, 927 P.2d 487, 494 (1996), which states in dicta that a slander of title claim does not accrue until it is discovered.  The authority cited in that case, however, suggests that the outcome may depend on whether the publication is more akin to a mass media publication or a false credit report.  See McKown v. Dun & Bradstreet, Inc., 744 F. Supp. 1046, 1049 (D. Kan. 1996) (as to libel claim based on false credit report, Kansas courts would find that limitations period begins to run on date of discovery).  Plaintiffs do not address when claims for UCC violations or injurious falsehood accrue.  In another context, this Court has found that Kansas courts would not recognize the tort of injurious falsehood.  See Sunlight Saunas, Inc. v. Sundance Sauna,, Inc., 427 F. Supp.2d 1032, 1072-73 (D. Kan. 2006).

[30]   As noted, in the Pennsylvania case against Aleritas and BCA, plaintiffs had already obtained a judgment which rescinded all loan document of any kind under Loan Nos. 5483 and
(continued...)

public record for which the law charges the parties with constructive notice.  See, e.g., Harms v. Burt,

30 Kan. App.2d 263, 267, 40 P.3d 329, 332 (2002).  On this record, the facts on their face suggest that

plaintiffs could have filed the claims in Tri-State I.  Under these circumstances, plaintiffs had an

affirmative obligation to plead facts which show that the claims had not yet accrued at the time they

filed Tri-State I.  See, e.g., Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir.

1980) (where dates in complaint make clear that claim is time-barred, plaintiff has burden to show

facts to toll statute); Spicer v. New Image Int'l, Inc., No. 04-2184-KHV, 2007 WL 38026, at *2

(D. Kan. Jan. 4, 2007) (where facts on face seem time-barred, complaint must allege facts which show

that discovery rule tolls statute of limitations).[31]  Plaintiffs assert no facts in this regard, and they have

not requested leave to amend the complaint to do so.[32]  On this record, plaintiffs have not alleged

sufficient facts to state claims which plausibly overcome res judicata.  See, e.g., Iqbal, 556 U.S. at

679; Twombly, 550 U.S. at 555.

### C.    Declaratory Judgment Exception

Plaintiffs assert that res judicata should not apply because in Tri-State I plaintiffs sought only

declaratory relief.  See Plaintiffs' Response (Doc. #8) at 9-11.  Although Kansas courts apparently

have not addressed the issue, plaintiffs assert that they would follow the general rule set forth in the

---

[30](...continued)
5484, including UCC statements.  Arguably, the judgment covered the UCC amendments filed by
defendant.

[31]      The Court recognizes that these cases deal with a plaintiff's duty to allege facts which
avoid a statute of limitations defense.  They are not exactly on point but the same logic demands that
plaintiffs plead facts sufficient to avoid a res judicata defense.  If plaintiffs have not done so, they
have failed to articulate a plausible claim for relief and the complaint must be dismissed under
Twombly and Iqbal.

[32]      Furthermore, plaintiffs' briefs on the motion to dismiss do not suggest that such facts
exist.

Restatement (Second) of Judgments and American Jurisprudence 2d.  Under that rule, suits for declaratory judgment are conclusive only as to matters actually adjudicated and not as to all matters which could have been presented for adjudication.[33]  See Restatement (Second) of Judgments § 33; 22A Am. Jur.2d, Declaratory Judgments § 248.  This rule applies, however, only if plaintiff seeks solely declaratory relief.  See Restatement (Second) of Judgments § 33, Comment c; 22A Am. Jur.2d, Declaratory Judgments § 248.  Thus, a plaintiff who brings an action for both declaratory and coercive relief is barred from bringing an action for coercive relief based on the same claim.[34]  See 22A Am. Jur.2d, Declaratory Judgments § 248; see also Criste v. City of Steamboat Springs, 122 F. Supp.2d 1183, 1188 (D. Colo. 2000) (overwhelmingly majority of courts to consider issue hold where party seeks coercive as well as declaratory relief, normal claim preclusion rules apply).

Even if Kansas courts were to recognize the declaratory judgment exception, it would not apply in this case.  Once defendant filed its counterclaim in Tri-State I, Rule 13(a), Fed. R. Civ. P,

[33]    Under this approach, a judicial declaration regarding the existence and nature of a relation between the parties does not merge with other potential claims that could have been brought.  See Restatement (Second) of Judgments § 33, Comment c.  Thus, plaintiff or defendant may seek further declaratory or coercive relief in a subsequent action.  Id.  Non-merger of the claims is justified based on the purpose of declaratory relief, i.e. to provide a remedy that is simpler and less harsh than coercive relief.  Id.  Under this theory, a declaratory action determines only what is actually decided and does not have a preclusive effect on other contentions which might have been advanced in the declaratory action suit.  Id.

[34]    Although plaintiffs and Judge Crow referred to the relief requested and awarded in Tri-State I as "declarative," it ordered that all UCC filings be cancelled or terminated and is therefore coercive in nature.  In determining whether a remedy constitutes an injunction, the Court relies on the substance of the order, not merely its form.  See Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1222 (10th Cir. 2009).  In Tri-State I, plaintiffs requested – and Judge Crow ordered – that all security in defendant's possession or control be returned to plaintiffs and that all UCC filings be cancelled or terminated.  The nature of this relief appears to be coercive in that it commands defendant to do something or refrain from doing something.  See, e.g., Umhey v. Cnty. of Orange, N.Y., 957 F. Supp. 525, 530 (S.D.N.Y. 1997).  The Court does not decide this issue, however, because even if plaintiffs sought only declaratory relief, as discussed infra, Rule 13(a) required them to bring the UCC claims in response to defendant's counterclaim.

required plaintiffs to file any claim which arose out of the transaction or occurrence that was the subject of defendant's claim. See Fed. R. Civ. P. 13(a).[35]  In Tri-State I, based on its role as participating bank and assignee of loan administration duties, defendant asserted counterclaims for damages based on breach of contract, i.e. plaintiffs' failure to make loan payments.  In deciding defendant's counterclaims, Judge Crow determined that defendant (1) had no legal relationship with plaintiffs, (2) was not a third-party beneficiary under the loan agreements, (3) did not acquire all of Aleritas's rights and title to the loans and (4) did not have a right to bring an action directly against plaintiffs for defaulting on the loans.  Plaintiffs' claims here – that defendant wrongfully filed UCC amendments which contained false statements regarding its rights to collateral under the loans – arise out of the same transaction or occurrence of the subject matter of defendant's counterclaims in Tri-State I, namely the scope of defendants' rights and interests under the loans.[36]  Accordingly, Rule

---

[35]     Rule 13(a) states as follows:

(1) In General. A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
    (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
    (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a).

[36]     Rather than attempt to precisely define the terms "transaction" and "occurrence," most courts prefer to suggest standards under which the compulsory or permissive nature of specific counterclaims may be determined.  Fox v. Maulding, 112 F.3d 453, 457 (10th Cir. 1997).  Such factors include whether (1) the issues of fact and law are largely the same; (2) res judicata would bar a subsequent suit absent the compulsory counterclaim rule; (3) substantially the same evidence supports or refutes the claim and counterclaim; and (4) a logical relation exists between the claim and the counterclaim.  Id.; see also Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Federal Practice and Procedure § 1410 (listing same factors).  Based on these factors, the Court concludes that plaintiffs' claims here were compulsory counterclaims to defendant's claims in Tri-State I.  First, the issues of law and fact arise out of the same transaction, i.e. defendant's role as

(continued...)

13(a) precludes plaintiffs from bringing the claims in this suit.  See, e.g., Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 600 F.3d 190, 196 (2d Cir. 2010).

### D.      Conclusion

The undisputed record demonstrates that plaintiffs' claims are barred by res judicata. Alternatively, the Court finds that Rule 13(a) required plaintiffs to assert the claims in response to defendant's counterclaims in Tri-State I.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss Complaint (Doc. #5) filed June 11, 2012 be and hereby is **SUSTAINED.**  The Court dismisses with prejudice plaintiffs' claims and directs the Clerk to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Leave To File Sur-Reply (Doc. #10) filed July 20, 2012 be and hereby is **SUSTAINED.**  On or before **March 19, 2013**, plaintiffs shall file the surreply attached as Exhibit A to Plaintiffs' Reply In Support Of Motion For Leave to File Sur-Reply (Doc. #13).

Dated this 14th day of March, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[36](...continued)
participating lender and assignee of administration duties on the underlying loans.  Second, as discussed, res judicata would bar a subsequent suit.  Third, substantially the same evidence is involved, i.e. the scope of defendant's rights in the underlying loans.  Fourth, a logical connection exists because the determination of defendant's rights regarding the loans is relevant to whether the UCC amendments were false.